NORTHCUTT, Judge,
concurring.
I concur in the decision. reflected in Judge Kelly’s nicely crafted opinion, but I would feel differently if I weren’t bound by this court’s decision in Palmer v. State, 753 So.2d 679 (Fla. 2d DCA 2000), and .its progeny. In Palmer an officer stopped a vehicle because poor nighttime lighting conditions made it difficult for him to read the expiration date on the vehicle’s temporary license tag. This court observed that the stop was justified “because of the possibly expired” tag. Id. at 680. But the court concluded that it was unlawful for the officer to detain the motorist after he found that the tag had not expired.
I would have held that the Palmer stop was unlawful from its inception. The reason is that, as Judge Kelly has aptly .detailed in the case now before us, an investigatory stop is lawful only if it is initiated under circumstances that reasonably, i.e., objectively, lead the officer to suspect that a crime or violation is afoot. Palmer turned this test on its head: rather than examining the circumstances to determine whether they would cause a reasonable person to suspect that a violation was be *34 ing committed, in that case the court condoned the stop because the circumstances did not permit the officer to dispel his simple curiosity about whether the motorist might possibly be committing a violation. Hypothetically, then, if in this case the computer system had been temporarily inoperative Palmer seemingly would have permitted the officer to stop every car she encountered simply because the circumstances prevented her from checking their registrations beforehand.
To be sure, this case presents a closer question than did Palmer because the officer’s computer inquiry — a reasonable attempt to satisfy her curiosity without intruding on the motorist’s Fourth Amendment rights — resulted in the “no record found” message. Setting Palmer aside for the moment, the question is whether that response produced in the officer a reasonable suspicion that the car was unregistered, or whether it merely failed to dispel the officer’s idle curiosity about its registration status.
Read literally, the “no record found” message imparted nothing one way or the other about the car’s registration. Only by putting this message in the context of the other possible responses programmed into the computer inquiry system could we discern whether it was intended to indicate that the car was unregistered. After all, there was a tag attached to the car, and no other circumstance suggested that anything was amiss. If the tag was unassigned or expired, might the response to the computer inquiry have said so? Based on the record created in the circuit court, we simply do not know; the record contains no evidence about how the tag inquiry computer program was supposed to work.
Instead, I suspect that my colleagues’ view of the case is at least somewhat informed by their own computing experiences. To a point, there is nothing wrong with this. Common experiences create common knowledge. Thus, for example, I would not bat an eye before voting to uphold a conviction for motor vehicle theft based on the victim’s testimony that he saw the defendant steal his “Chevy.” And it is certainly true that, a quarter century after the introduction of the personal computer, many of us have had the sometimes jarring experience of receiving a “no record found” message, or some such.
But there are a couple of reasons why I don’t think it is appropriate for this case to turn on a common understanding of the phrase “no record found.” The first stems from the fact that, while it is reasonable to suspect that a “Chevy” is a motor vehicle, it is not reasonable to suspect that a “motor vehicle” is a Chevy. The same principle applies here: in our common experience we know that “no record found” could mean that the record does not exist and we know that this explanation for the message is but one among a range of possibilities, wide or narrow, depending on all the circumstances. In other words, “no record found” is the equivalent of “motor vehicle,” not of “Chevy.” The second reason I would not apply a common understanding of the phrase “no record found” to this case is that the principle I just mentioned was borne out by the officer’s own testimony.
At the hearing on the motion to suppress, the officer conceded that her interpretation of the “no record found” response was her own subjective one. She testified that, to her, the message meant that the car was not currently registered. My colleagues in the majority conclude that, “given her experience and the facts known to her at the time,” it was reasonable for the officer to infer that the car was not properly registered.
*35 But, in fact, the officer did not recount any previous experience that would support that conclusion. In fact, the evidence was to the contrary. In the officer’s only testimony about her prior experience she acknowledged that she had previously performed traffic stops after her computer returned “no record found” responses to her tag inquiries, only to discover that the vehicles were properly registered. She had received no explanation for this, but speculated that the Department of Motor Vehicles had made mistakes. No one asked, and the record does not disclose, whether this was a common occurrence or a rare one. With that information, we might be able to assess the reasonableness of the inference the officer drew from the computer message. Without it, we cannot. But the record suggests that, based on her experience, the officer herself might not have attached much significance to the “no record found” message beyond its failure to disprove the possibility that the car was unregistered. “There have been periods where the D.M.V. has entered things incorrectly,” she said. “That’s why you conduct the stop to see the paper registration, to verify the paper — .”
The State has pointed out to us that the evidence did not demonstrate that the message received by the officer was the result of an error. True enough. But the significance of the officer’s testimony was that she had received “no record found” messages in regard to cars that were properly registered. Whether mistaken or not, the relative frequency of those occurrences bears on whether the officer’s experience reasonably led her to suspect that Ellis’s car was unregistered based solely on that response to her inquiry.
I do not mean to suggest that a computer’s “no record found” response to an officer’s tag inquiry cannot reasonably cause the officer to suspect that the tag is not registered. But our duty in each case is to assess the reasonableness of the officer’s suspicion under all the circumstances. In this case, the record contains no evidence of the intended meaning of the phrase “no record found” as used in the tag inquiry computer program employed by the officer who stopped Ellis; we cannot conclude from our common knowledge of the phrase that it meant the car was unregistered; and the only evidence of the officer’s experience was to the contrary. Were it not for Palmer, I would vote to reverse because the State did not meet its burden to prove that the circumstances reasonably caused the officer to suspect that Ellis was driving an unregistered car. But, bound by that decision, I must concur in the affirmance.